UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELLI MANUEL TAQUINO, JESSICA MANCHESTER and ASHLEY MANUEL** | **CIVIL ACTION NO.: 2:10-cv-1921** |
| | **JUDGE:** |
| **VERSUS** | **MAGISTRATE:** |
| **TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; ANTHONY HAYWARD; HALLIBURTON ENERGY SERVICES, INC.; CAMERON INTERNATIONAL CORPORATION; ANADARKO PETROLEUM CORPORATION and MITSUI & CO. (U.S.A.), INC.** | **JURY TRIAL REQUESTED** |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Kelli Manuel Taquino (Individually and as administrator and personal representative of the estate of Keith Blair Manuel), Jessica Manchester and Ashley Manuel, individually and as the heirs of the presumed deceased, Keith Blair Manuel, who file this complaint against TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION, ANADARKO PETROLEUM CORPORATION and MITSUI & CO. (U.S.A.), INC., as follows:

1

1.

Made defendants herein are:

A.    TRANSOCEAN HOLDINGS, LLC, (TRANSOCEAN ENTITY), a foreign corporation doing business in the State of Louisiana;

B.    TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., (TRANSOCEAN ENTITY), a foreign corporation doing business in the State of Louisiana;

C.    TRANSOCEAN DEEPWATER, INC. (TRANSOCEAN ENTITY), a foreign corporation doing business in the State of Louisiana;

D.    BP, PLC, (BP ENTITY), a foreign corporation doing business in the State of Louisiana;

E.    BP PRODUCTS NORTH AMERICA, INC., (BP ENTITY), a foreign corporation doing business in the State of Louisiana;

F.    ANTHONY HAYWARD, (BP ENTITY) upon information and belief, the Chief Executive Officer of BP ENTITIES;

G.    HALLIBURTON ENERGY SERVICES, INC., hereinafter referred to as "HALLIBURTON," a foreign corporation doing business in the State of Louisiana;

H.    CAMERON INTERNATIONAL CORPORATION, hereinafter referred to as "CAMERON", a foreign corporation doing business in the State of Louisiana;

I.    ANADARKO PETROLEUM CORPORATION, (BP ENTITY), a foreign corporation doing business in the State of Louisiana; and,

J.    MITSUI & CO. (U.S.A.), INC., (BP ENTITY), a foreign corporation doing business in the State of Louisiana.

2.

The jurisdiction of this Honorable Court is based upon the provisions of 28 U.S.C. 1333(1), and is being brought pursuant to the provisions of 46 U.S.C. Section 688 (the "Jones Act") and the provisions of the general maritime law and general maritime products liability law.

Plaintiff designates this matter as a maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.

3.

At all times pertinent, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel were the natural children of their presumed deceased father, Keith Blair Manuel. Kelli Manuel Taquino is the administrator and personal representative of the estate of Keith Blair Manuel.

4.

Defendants, TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION, ANADARKO PETROLEUM CORPORATION and MITSUI & CO. (U.S.A.), INC., are justly and truly indebted unto your plaintiffs, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel, individually and as the heirs of Keith Blair Manuel.

5.

At all material times, Keith Blair Manuel was an employee of MI Swaco, contracted to serve the interests of TRANSOCEAN ENTITIES and/or BP ENTITIES aboard the vessel, *Deepwater Horizon*.

6.

Keith Blair Manuel was permanently assigned by defendant, TRANSOCEAN ENTITIES, to work aboard the offshore drilling vessel, *Deepwater Horizon*, a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by

TRANSOCEAN ENTITIES and/or BP ENTITIES. At all material times herein, Keith Blair Manuel was a contract employee aboard *Deepwater Horizon* and permanently assigned to the vessel, *Deepwater Horizon*.

7.

On or about April 20, 2010, Keith Blair Manuel was performing his duties on-board the vessel, *Deepwater Horizon*, 50 miles southeast of Venice, Louisiana. The vessel was located more than a marine league outside of and adjacent to the Louisiana shore. Without warning to the plaintiff, on or about 10:00 p.m. on April 20, 2010, while the vessel, *Deepwater Horizon*, was performing drilling operations for crude oil, an explosion occurred on the vessel. Keith Blair Manuel was aboard the vessel during the explosion and resulting fires.

8.

As a result of the above-described incident, Keith Blair Manuel's body has not been found despite an extensive and thorough search orchestrated by the United State Coast Guard which lasted several days. It has been more than eight weeks since Keith Blair Manuel disappeared. Under Louisiana Civil Code Article 60 and the general maritime law (*Deal v. A.P. Bell Fish Co.,* 647 F.2nd 438 (5th Cir. 1982), Keith Blair Manuel is herein alleged to be presumed dead as a matter of law.

9.

At all times material hereto, the vessel on which Keith Blair Manuel was injured and died was owned, navigated in navigable waters, manned possessed, managed, controlled, chartered and/or operated by defendants, TRANSOCEAN ENTITIES, and/or BP ENTITIES.

4

10.

This casualty occurred as a result of the negligence of, TRANSOCEAN ENTITITES, BP ENTITIES, HALLIBURTON and CAMERON.  These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 688 and the general maritime law for negligence.

11.

Keith Blair Manuel's incident was caused by all defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Minerals Management Service (MMS) and the United States Coast Guard, including, but not limited to, the items iterated in paragraph 15.

12.

Defendant herein, HALLIBURTON, prior to the explosion, was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed those duties, which was a cause of the explosion.

13.

Defendant herein, ANTHONY HAYWARD, was at all times ultimately in control of and supervised the conduct of BP ENTITIES and/or TRANSOCEAN ENTITIES and all contractors of BP ENTITES/TRANSOCEAN ENTITIES.  He failed to supervise the conduct and activities of BP ENTITIES and/or TRANSOCEAN ENTITIES and all contractors of BP ENTITIES/TRANSOCEAN ENTITIES that led to the events resulting in the death of Keith Blair Manuel.

14.

Upon information and belief, CAMERON designed the blowout preventer (BOP) equipment controlling the well being serviced and operated by BP ENTITIES and TRANSOCEAN ENTITIES.  A substantial factor in the incident that caused the death of Keith Blair Manuel was the failure of the BOP.  The BOP further failed to comply with its express warranty of fitness and service.  But for the failure of the BOP, the incident and resulting death of Keith Blair Manuel would not have occurred.

15.

Upon information and belief, ANADARKO PETROLEUM CORPORATION owned and/or held a proprietary interest in the *Deepwater Horizon*, the oil lease and BP ENTITIES' operations as it relates to the production of petroleum products from the well.  ANADARKO PETROLEUM CORPORATION was engaged in a joint venture endeavor with BP ENTITIES and as such is liable for the negligent conduct of BP ENTITIES.

16.

Upon information and belief, MITSUI & CO. (U.S.A.), INC., owned and/or held a proprietary interest in the *Deepwater Horizon*, the oil lease and BP ENTITIES' operations as it relates to the production of petroleum products from the well.  MITSUI & CO. (U.S.A.), INC., was engaged in a joint venture endeavor with BP ENTITIES and as such is liable for the negligent conduct of BP ENTITIES.

17.

BP ENTITIES negligently, intentionally and repeatedly chose risky procedures in order to reduce costs and save time and made minimal efforts to contain or control the risk of injury and/or death to those aboard the *Deepwater Horizon*.

18.

Specifically, BP ENTITIES ignored industry guidelines and warnings from its own employees relative to safe cementing and control operations of the well that were specifically intended to prevent a blowout of the well and escape of natural gas and other flammable product from the well.

19.

Despite specific warnings and advice to the contrary, BP ENTITIES chose to install an inadequate number of centralizers designed to stabilize the production pipe and casing that is designed to ensure safe cementing operations to prevent the escape of natural gas and other flammable product from the well.

20.

On April 20, 2010, BP ENTITIES chose not to test the cemented well casing to determine its integrity and ability to prevent the escape of natural gas and other flammable product from the well.   The testing of the cement well casing is a long-standing industry safety standard and petroleum production requirement.  BP ENTITIES' intentional refusal to test a well casing cement job of this nature is clear and convincing evidence of its grossly negligent, willful and wanton conduct, which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

7

21.

BP ENTITIES intentionally chose not to circulate the mud in the well to test for gas influx into the well casing and production piping in an effort to save time and money. The circulation and testing of mud in an oil and gas production well is a well recognized industry standard safety. BP ENTITIES' decision to forego circulation and testing of the mud during drilling and production operations aboard the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, will and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

22.

Prior to the incident in question, BP ENTITIES representatives recognized the operation of the *Deepwater Horizon* as an "engineering nightmare" in the days and weeks preceding the incident because BP ENTITIES' conduct in choosing not to adhere to fundamental industry safety and drilling practices as more fully described herein. BP ENTITIES' recognition of its own conduct as an "engineering nightmare" further demonstrates BP ENTITIES' knowledge of the unreasonable risk of harm it created relative to all those aboard the *Deepwater Horizon* and that its conduct was intentional, wanton and reckless, substantially certain to result in the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

23.

In an effort to save time and money, BP ENTITIES chose to install production pipe instead of a pipe and well liner. The installation of production pipe instead of a pipe and well liner in an oil and gas production well is a well recognized industry safety standard. BP

8

ENTITES' decision to ignore those standards in connection with the operations of the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, willful and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

24.

In an effort to save time and money, BP ENTITIES consciously chose not to install a lock-down ring on the well to prevent the escape of gas from the well. The installation of a lock-down ring on an oil and gas production well is a well recognized industry safety standard. BP ENTITIES' decision to ignore those standards in connection with the operations of the *Deepwater Horizon* is clear and convincing evidence of its grossly negligent, will and wanton conduct, all of which proved to substantially contribute to the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

25.

Prior to the incident in question, BP ENTITIES and TRANSOCEAN ENTITIES were aware that the BOP's annulus was destroyed and/or otherwise inoperable and would not function as intended to prevent the type of blowout and loss of control of the well. The damaged annulus further demonstrates BP ENTITIES and TRANSOCEAN ENTITIES' knowledge of the unreasonable risk of harm it created relative to all those aboard the *Deepwater Horizon* and that their conduct was intentional, wanton and reckless, substantially certain to result in the blowout, loss of control of the well, and explosion that injured and killed Keith Blair Manuel.

26.

BP ENTITIES and TRANSOCEAN ENTITIES knew to a reasonable degree of engineering certainty that the replacement of drilling mud/fluids with seawater would result in an eruption and escape of flammable and explosive gasses and fluids, substantially certain to result in the explosion and fire that caused the death of Mr. Manuel.

27.

BP ENTITIES and TRANSOCEAN ENTITIES had specific knowledge prior to the event in question that the blowout prevention equipment was defective, inoperable and/or otherwise not fit for its intended purposes and would not operate to prevent the blowout and resulting explosion.

28.

Keith Blair Manuel, at all times pertinent, was where he was ordered to be and performing the functions he was instructed and obliged to perform pursuant to the directives of defendant, BP ENTITIES and/or TRANSOCEAN ENTITITES.

29.

The accident was caused by no fault of the plaintiffs and was caused solely by the negligence of the defendants as more fully set forth herein.

30.

The above-described incidents were caused solely by the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, HALLIBURTON, and CAMERON through their agents, servants and employees, which are more particularly described as follows:

10

## NEGLIGENCE OF TRANSOCEAN ENTITIES

a.      Failing to provide a competent crew;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise decedent and other employees;

d.      Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to properly follow drilling protocols and policies, proper well monitoring and control practices;

g.      Failing to exercise due care and caution;

h.      Failing to avoid this accident;

i.      Failing to provide decedent with a seaworthy vessel;

j.      Failing to maintain equipment essential to the safety of crewmembers;

k.      Intentionally engaging in conduct that was substantially certain to result in the blowout and explosion of the vessel in question (i.e. seawater replacement of drilling fluid); and

l.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF BP ENTITIES

a.      Failing to properly train and/or supervise its crew and other employees;

b.      Failing to ensure that its crew worked in a safe and prudent manner;

c.      Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

d.      Failing to exercise due care and caution;

e.      Failing to avoid this accident;

f.      Failing to provide decedent with a seaworthy vessel;

11

g.      Failing to maintain equipment essential to the safety of crewmembers;

h.      Intentionally engaging in conduct that was substantially certain to result in the blowout and explosion of the vessel in question (i.e. seawater replacement of drilling fluid); and

i.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF HALLIBURTON

a.      Failing to sufficiently and competently perform cementing operations aboard the vessel;

b.      Failing to properly supervise its employees;

c.      Failing to properly train and/or supervise decedent and other employees;

d.      Failing to provide decedent with a safe place to work, and requiring decedent to work in unsafe conditions;

e.      Failing to provide sufficient personnel to perform operations aboard the vessel;

f.      Failing to exercise due care and caution;

g.      Failing to avoid this accident; and,

h.      Other acts of negligence which will be shown more fully at trial.

## NEGLIGENCE OF CAMERON

a.      Failing to properly design and/or manufacture the blowout preventer;

b.      Failing to properly train, instruct and/or provide accurate instructions for installation of the blowout preventer;

c.      Failing to comply with express warranties of service and fitness relative to the blowout preventer; and,

d.      Other acts of negligence which will be shown more fully at trial.

12

31.

In the further alternative, plaintiffs, reiterating and re-alleging each and every allegation set forth above, as though set forth herein in extensor, avers the applicability of the doctrine of Res Ipsa Loquitur.

32.

Upon information and belief, gas fumes, unusual and excessive vibration, loud unusual noises, panicked workers seeking to escape the vessel, sounding of emergency alarms and the panicked efforts of those attempting to engage the defective BOP's resulted in the decedent's awareness that the vessel was in danger of imminent and catastrophic failure. Under these circumstances and given Keith Blair Manuel's experience and training, he was aware of the certainty of his impending physical harm and probable death by explosion and/or fire, all of which led him to experience severe emotional distress, anxiety and pre-death suffering.

33.

As a result of the above-described negligence, Plaintiffs, Kelli Manuel Taquino, Jessica Manchester and Ashley Manuel, seek to recover the following survival action and wrongful death damages:

a. Pre-death past pain, fear and suffering;

b. Pre-death past mental pain, suffering and anguish;

c. Past lost wages;

d. Past lost found;

e. Loss of future earning capacity;

f. Loss of future found;

13

g.    Loss of fringe benefits;

h.    Loss of services and support;

i.    Loss of nurture, guidance, care and instruction;

j.    Funeral expenses:

k.    Loss of inheritance;

l.    Disfigurement, disability and/or death;

m.    Loss of enjoyment of life;

n.    All survival damages recognized under the general maritime law; and,

o.    Other damages which shall be proven at trial.

34.

Plaintiffs are entitled to prejudgment interest on their damages from the date of loss.  As to any damages which the court determines are not properly subject to an award of prejudgment interest, plaintiffs demand interest from the date of judicial demand.

35.

Plaintiffs are entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

36.

Further, given the egregious, reckless, wonton and intentional conduct of the defendants, plaintiffs seek and are entitled to recover punitive damages against all defendants.

37.

It is anticipated that the defendants will defend their conduct and plaintiffs' claim by asserting the applicability of the Death on the High Seas Act (46 USCA 30301).  Plaintiffs assert

14

that the Death on the High Seas Act is inapplicable due to the intentional, wanton and reckless conduct of the defendants.  Plaintiffs further assert the Death on the High Seas Act is a draconian and unconstitutional statute/rule of law, the applicability of which is unconscionable under the circumstances of this case.

38.

Plaintiffs therefore seek to have the Death on the High Seas Act declared unconstitutional as it deprives plaintiffs of their due process rights and privileges under the Constitution of the United States and all applicable amendments thereto.

39.

Plaintiffs herein request trial by jury.

**WHEREFORE,** plaintiffs, Kelli Manuel Taquino (Individually and as administrator and personal representative of the estate of Keith Blair Manuel), Jessica Manchester and Ashley Manuel, pray that the defendants, TRANSOCEAN HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION; ANADARKO PETROLEUM CORPORATION; and MITSUI & CO. (U.S.A.), INC. be duly cited and served with a copy of this Complaint and that after due proceedings are had, there be judgment rendered herein in favor of the plaintiffs and against defendants, TRANSOCEAN, HOLDINGS, LLC; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER INC.; BP, PLC; BP PRODUCTS NORTH AMERICA, INC.;

15

HALLIBURTON ENERGY SERVICES, INC.; ANTHONY HAYWARD; CAMERON INTERNATIONAL CORPORATION; ANADARKO PETROLEUM CORPORATION; and MITSUI & CO. (U.S.A.), INC. in an amount sufficient to adequately compensate your plaintiffs for compensatory and punitive damages, together with legal interest thereon from the date of judicial demand until paid, for all costs of this lawsuit and for all general and equitable relief.

Respectfully Submitted,

**McKERNAN LAW FIRM**

s/John H Smith
John H Smith, TA (#23308)
Chet G. Boudreaux (#28504)
Richard F. Zimmerman, III (#31374)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone:  (225) 926-1234
Facsimile: (225) 926-1202
jsmith@mckernanlawfirm.com

Michael V. Clegg (#4192)
8714 Jefferson Highway, Suite B
Baton Rouge, LA  70809
Telephone:  (225) 923-1055
Facsimile:  (225) 923-0955
mike@clegglawdog.com

16